```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KRISTA C. BRENNAN,                  :
                                    :
                    Plaintiff,      :   CIVIL ACTION
                                    :
     v.                             :   No. 14-CV-1560
                                    :
PHILLIP J. CANNELLA, III,           :
et al.,                             :
                                    :
                    Defendants.     :
```

**MEMORANDUM**

**JOYNER, J.**                                          **MAY 12, 2015**

Before the Court are Defendants' Motion for Summary Judgment (Doc. No. 19), Plaintiff's Response in Opposition thereto (Doc. No. 21), and Defendants' Reply in Further Support thereof (Doc. No. 22). For the reasons given below, the Motion is GRANTED IN PART and DENIED IN PART. An Order follows.

**I. BACKGROUND**

This matter is the second suit arising from a dispute between Ms. Brennan and the Defendants. In the other matter, previously before this Court, the instant-defendants filed suit against Ms. Brennan alleging that she "intentionally posted false, misleading, deceptive and harmful information" about the Defendants on her websites — TruthaboutCannella.com and TruthaboutCannella.net. See Second Amended Complaint, Case No. 12-cv-1247, Doc. No. 156. The Parties recently agreed to dismiss that suit. Case No. 12-cv-1247, Doc. No. 201.

1

In this matter, Ms. Brennan alleges that the Defendants utilized a variety of unlawful methods to take her sites offline and access her personal accounts. See Amended Complaint, Doc. No. 8. More specifically, Plaintiff alleges that Cannella and his associates (1) mounted denial-of-services attacks in an effort to disable the sites; (2) requested that the website host delete Plaintiff's data from its servers; (3) unlawfully accessed several of her web hosting and email accounts, and (4) used this access to disable her websites, steal her private information, and impersonate her. Id. at ¶¶ 14-32. She has brought claims against the Defendants for invasion of privacy and identity theft, negligence *per se* under a variety of statutes, and for civil conspiracy. Id. at ¶¶ 33-69.

In the instant Motion, Defendants move for summary judgment on all of these claims.

**II. STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, "inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (alteration in original; quotation marks omitted). "There is no issue for trial

unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of the ... pleading; its response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (alteration in original; quotation marks omitted).

**III. Discussion**

    **A. Negligence *Per Se* Claims**

Plaintiff's Complaint presents three claims premised on a negligence *per se* theory of liability. She alleges that the Defendants violated three Pennsylvania criminal statutes, all related to the unlawful use of computers. See Doc. No. 8 at ¶¶ 45-63. These statutes do not create private causes of action, so Plaintiff has attempted to use negligence *per se* to create them. This is an improper use of the doctrine and the claims must be dismissed.

The doctrine of negligence *per se* is not a standalone tort, but rather an evidentiary presumption applicable under certain circumstances in negligence actions. Put simply, the doctrine "establishes, by reference to a statutory scheme, the standard of care appropriate to the underlying tort." In re Orthopedic Bone

Screw Products Liab. Litig., 193 F.3d 781, 790 (3d Cir. 1999). Thus it "enables plaintiffs to establish as a matter of law that the defendant's conduct constituted a breach of duty in a negligence action, so that only causation and damages need be proved." Id. The doctrine cannot be used to simply create a private cause of action in any statute that does not provide for one. See id. at 791 ("[Plaintiffs'] interpretation of per se liability would allow private plaintiffs to recover for violations of a federal statute that creates no private cause of action .... We do not believe the concept of per se liability supports such a result.").

This is not a negligence action — Plaintiff is claiming that the Defendants intentionally attacked her websites and personal accounts. Thus the doctrine of negligence *per se* is not applicable to the facts alleged, and it cannot be used to create private causes of action where none exist. As a result, Claims III, IV, and V are dismissed.[1]

**B. Remaining Claims**

Plaintiff's Complaint brings 4 other claims: (1) common law invasion of privacy; (2) unlawful access to stored communications under 18 U.S.C. § 2701; (3) identity theft under 18 Pa. Stat. § 4120; and (4) civil conspiracy. Apart from the conspiracy claim,

---

[1] The Parties spend considerable time discussing whether certain of these claims are barred by the applicable statute of limitations. As we have determined that the claims are not legally cognizable, we need not address the limitations issue.

the claims all stem from Plaintiff's allegation that the Defendants unlawfully accessed her online accounts. See Doc. No. 8 at ¶¶ 24-26, 28-29, 34-38, 40-44, 65-67.

Defendants do not address these claims individually, but instead argue only that they "suffer from a fatal flaw" in that "Brennan has failed to come up with any evidence whatsoever that it was <u>the Defendants</u> who engaged in any of the wrongful conduct." Doc. No. 19 at 10 (emphasis in original). In other words, the Defendants concede that Brennan has presented evidence showing that certain detrimental conduct occurred, but argue only that she has "utterly fail[ed] to establish, with real, admissible evidence ... that it was the Defendants who were involved in this conduct." Id. at 14 (emphasis omitted). As a result, Defendants argue, these claims cannot proceed to trial. We disagree — Ms. Brennan has produced evidence tending to show that the defendants conducted cyber-attacks on her websites, had the means to attack her personal accounts, and had the motivation to do so. This evidence is sufficient to warrant submission to a jury.

Brennan has produced evidence tending to show that the defendants engaged in illegal attacks on her two "Truth about Cannella" websites. The primary source of this evidence is the Deposition of Stephen M. Fine. See Doc. No. 21-1. Mr. Fine is the brother of defendant Small and worked for defendant First Senior Financial Group ("FSFG") from July 2011 to May 2012. Fine Dep.

5

129:20-130:2. He testified that while working for FSFG he conducted two "denial-of-service attacks"[2] on the Truth about Cannella website. Fine Dep. 56:21. He states that Cannella "supported and paid for the equipment and the time necessary to conduct the attacks." Id. at 56:18-21. Cannella apparently knew that the attacks were not legal, and also made sure to use computers that could not be traced back to him or FSFG. Id. at 58:15-59:11. Another former FSFG employee corroborates Mr. Fine's story, stating that on multiple occasions he "heard Mr. Cannella state that FSFG personnel were attempting to disable one or both of the [Truth about Cannella] web sites using technical means outside of the judicial process." Declaration of Robert P. Burns, Doc. No. 21-21, at ¶ 8.

Additionally, Brennan has produced evidence tending to show that the defendants utilized unlawful means in attempts to determine her identity. Mr. Fine testified that in addition to the denial-of-service attacks, he and other FSFG personnel attempted several times to "get behind" the site's firewall to "find out who was behind it." Fine Dep. 60:11-14. At another point, Defendant Cannella encouraged an FSFG employee to use his friendship with a

---

[2] A denial-of-service attack is an unlawful method of attacking a website in order to prevent legitimate users from accessing it. See generally Department of Homeland Security - U.S. Computer Emergency Readiness Team, Understanding Denial-of-Service Attacks, (February 6, 2013), https://www.us-cert.gov/ncas/tips/ST04-015. The most common form of this attack is where an attacker floods the target site's servers with requests to view the page; this can overload the server and prevent legitimate access to the site. Id.

Comcast employee to unlawfully obtain information about a Comcast user they believed to be behind the site. Id. at 60:14-64:13. Cannella apparently did this with full knowledge of the illegality of these actions. Id. at 64:5-13.

Mr. Fine stated that the motivation behind these actions was Cannella's belief "that the site was impeding his ability to make money and ... killing his reputation." Id. at 59:17-22. As result, Cannella "wanted it down at any and all costs." Id. at 59:24-60:1. Fine also testified that "in my time with [Cannella], taking that site and removing that site, finding out who was behind the site was the driving force of every second - if he wasn't trying to make money, he was trying to get that site down and willing to pay whatever it costs to do it." Id. at 60:2-7. Mr. Cannella's own actions lend credence to this testimony. At one point after the website had been disabled, Canella sent text messages to former associates appearing to gloat about the site's disappearance. See Doc. No. 21-4 at 13-17 of 17.

Fine's testimony also provides evidence tending to show that the Defendants had the capability to conduct the attacks that underlie Plaintiff's claims. While at FSFG, Fine claimed to not have the capability to hack or impersonate email accounts. Fine Dep. 66:20-67:3. However, he believed that after he left the Defendants gained the capability to conduct these types of attacks. Id. at 68:1-20. Specifically, Mr. Fine indicated that Mr. Daniel

Barram (apparently the current COO of FSFG, see https://www.linkedin.com/pub/daniel- barram/22/307/7bb) was hired because of his ability to conduct more sophisticated cyber-attacks, which Fine believed included the ability to penetrate private online accounts. See Fine Dep. at 68:22-70:6.

While these facts do not conclusively show that the Defendants were behind the attacks on Ms. Brennan's online accounts, that is not the standard by which we decide summary judgment. Rather, we must look at the facts in a manner most favorable to Brennan and deny summary judgment where there exists "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Liberty Lobby, 477 U.S. at 249. Here, Brennan has produced evidence tending to show that the defendants conducted cyber-attacks against her in the past, had the motivation to attack her online accounts, and had the means to do so. This is sufficient evidence to warrant submission to a jury.

**IV. Conclusion**

Plaintiff's negligence *per se* claims III, IV, and V are not legally cognizable and therefore must be dismissed. Her remaining claims may proceed to trial.